## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| TJ'S LONGBOARD BURRITOS LLC, ) | Civil Action No. _____ |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **VERIFIED COMPLAINT** |
| ) | |
| TJ'S BURRITOS BLOOMFIELD LLC and ) | **JURY DEMANDED** |
| PATRICIA MARTIN, ) | |
| ) | |
| Defendants. ) | January 15, 2025 |

Plaintiff, TJ's Longboard Burritos LLC, for its claims against Defendants, TJ's Burritos Bloomfield LLC and Patricia Martin, hereby alleges, upon knowledge as to itself and its own acts, and upon information and belief as to all other matters, as follows:

### SUMMARY OF ACTION

1.    As alleged more fully herein, on or about February 22, 2021, Plaintiff's restaurant, TJ's Burritos, opened in East Granby, Connecticut.  Despite the ongoing pandemic, the fast casual restaurant, with Florida Gulf Coast themes and focused on burritos, tacos and other Tex-Mex food, as well as specialty coffees and baked goods, thrived and quickly developed a loyal following.  Through word-of-mouth, innovative product developments, sponsorship of local youth sports teams and other community involvement, and a robust online presence through social media, TJ's Burritos was able to achieve successive increases in year-over-year revenues through 2023.  In early March, 2022, it added a 22-seat bar and increased its physical space by approximately a third (an increase of more than 900 square feet).

2.    By the Spring of 2024, Plaintiff's sole member, Jeremy Jackson ("Jackson"), was

exploring various opportunities to either sell, franchise the TJ's Burritos concept, or open another restaurant.  In connection with the latter option, Jackson visited a vacant restaurant space in Bloomfield, Connecticut, approximately nine miles from TJ's Burritos location in East Granby, around July, 2024.  Ultimately, Jackson decided against expansion and refocused on a possible sale.

3.      Several weeks later Jackson realized that Defendant, Patricia "Tricia" Martin ("Martin"), his house mate and former girlfriend, with whom he co-managed TJ's Burritos, was meeting with the owner of the Bloomfield location about opening up her own restaurant.  In quick order, Martin moved forward with establishing a restaurant – according to an August 16, 2024 *Hartford Courant* article, the Bloomfield operation was to be a "second location" of TJ's Burritos in East Granby.

4.      However, that created a problem, as neither Martin nor Defendant, TJ's Burritos Bloomfield LLC, the limited liability company of which she is the sole member, has permission or authorization to use the TJ's Burritos name.  Plaintiff is the sole owner of the trademark, and Martin is not a member.  Jackson is not involved with the Bloomfield operation – also called TJ's Burritos – which had its grand opening on December 6, 2024.  In addition to the unauthorized use of the TJ's Burritos trademark, Martin commandeered all of TJ's Burritos' social media followers (primarily Facebook and Instagram) and diverted them exclusively to the Bloomfield restaurant.  The lack of exposure to thousands of interested TJ's Burritos followers has resulted in severely decreased sales for the East Granby location.

5.      Moreover, at or around the time of the Bloomfield location's soft opening in late October, 2024, and in the following weeks, Martin or someone acting at her direction: 1)

removed certain inventory from TJ's Burritos, including several bottles of speciality tequila, without permission or authorization; 2) continued unnecessary and excessive ordering of supplies for TJ's Burritos, so that its inventories significantly exceeded need or capacity; 3) lured away the line cook from TJ's Burritos, leaving the East Granby restaurant short-staffed for several weeks; 4) changed the password for the TJ's Burritos Google drive, so Jackson can no longer access the restaurant's gmail account or operational files and documents, 5) changed the password for TJ's Burritos' Facebook Business Manager account, so Jackson can no longer maintain or modify the restaurant's Facebook page which severely hampered marketing and advertising for the past holiday season; 6) changed the password to the TJ's Burritos account for Sling, a restaurant-specific scheduling software program, so that for several weeks, Jackson was unable to easily create work schedules for TJ's Burritos; 7) charged TJ's Burritos' trade accounts for certain expenses for the Bloomfield restaurant, such as business cards and promotional flyers ("Did you know that TJ's Burritos Bloomfield is now open right around the corner?") and repairs and renovations to the bar area provided by a Springfield, MA-based plumbing service; 8) charged certain other expenses for the Bloomfield restaurant, such as telephone and internet setups, to TJ's Burritos' corporate credit card; and 9) changed the password and contact information for the restaurant's Constant Contact account, thereby eliminating the ability of TJ's Burrito to contact customers directly.

6.      Based on the foregoing, as well as other activities alleged herein, Plaintiff brings this action to recover the damages it continues to sustain because of Defendants' wrongful conduct, and asserts claims for trademark infringement and unfair competition, misappropriation of trade secrets, computer-related claims, tortious interference for prospective business relations

and violation of Connecticut's Unfair Trade Practices Act.  In addition to compensatory damages, Plaintiff also seeks costs and expenses of this action, and attorneys' fees.  Plaintiff reserves its right to seek injunctive relief based on the actions of Defendants alleged herein.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121; 18 U.S.C. § 1836; and 28 U.S.C. Section 1331, and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 regarding all state law claims.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this State, and because Defendants reside in Connecticut and have property located here.

## PARTIES

9.      Plaintiff, TJ's Longboard Burritos LLC ("Longboard LLC"), is a limited liability company created under the laws of Connecticut on or about September 18, 2020.  Jackson, a resident of East Granby, is the sole member of Longboard LLC.

10.     Longboard LLC owns TJ's Burritos, a restaurant in East Granby, Connecticut, which opened on or about February 22, 2021.  TJ's Burritos has a beach casual theme and offers Tex-Mex food and coffee "flights."  On or about March 3, 2022, it expanded into adjoining space in order to add a 22-seat full bar.  In its opening year, TJ's Burritos grossed $1.1 million in revenue, in 2022 it had increased to $2.1 million, and in 2023, it achieved $1.8 million in revenue.  For 2024, revenues were approximately $1.7 million.

11.     TJ's Burritos Bloomfield LLC ("Bloomfield LLC") is a limited liability company organized under Connecticut law.  According to records maintained by the Connecticut Secretary

of State, Bloomfield was created on or about July 26, 2024, and Martin is its sole member. Martin resides in East Granby, in the same house as Jackson.

12.    Bloomfield LLC owns and operates TJ's Burritos Bloomfield, a restaurant in Bloomfield, Connecticut (the "Bloomfield restaurant" or "Bloomfield location"), which had its soft opening on or around October 28, 2024 and its grand opening on December 6, 2024.  Upon information and belief, the Bloomfield location has most, if not all, of the same menu items as TJ's Burritos, a similar motif, and also has a full bar.

## BACKGROUND FACTS

13.    In mid-2020, recently unemployed from managing a downtown Hartford restaurant due to the pandemic-related shutdowns, Jackson decided to use personal savings and fulfill a lifelong goal of opening his own restaurant.  With decades of restaurant management experience, he had a concept of the restaurant he wanted, and as a resident of East Granby, he believed his hometown was the community in which to locate.

14.    In quick succession, Jackson retained counsel and formed Longboard LLC as a single-member LLC, located suitable space in East Granby, negotiated and executed the lease with the landlord.  He used his own funds and arranged financing for the restaurant and oversaw the space's build-out.  Jackson selected and arranged for installation of the commercial-grade kitchen equipment, hired the chef and together they designed the initial menu.  He personally guaranteed delivery contracts with major food suppliers and other vendors.

15.    Throughout this process, Martin, then Jackson's girlfriend, acted as a confidante, sounding board and resource, but she took on no financial obligations.  Although she was identified, along with Jackson as "owner/operators," she had no legal interest in Longboard LLC.

16. As TJ's Burritos continued to flourish, Martin's role evolved from "front of the house" to a more managerial position for which she received an annual salary. Martin took the lead in scheduling, ordering and marketing, as well as more creative aspects. For example, Martin was solely responsible for developing the "coffee flights" for which TJ's Burritos became known.

17. At any given time, one or more of Martin's three daughters worked at TJ's Burritos, and its employees were a mix of high school students and older, more experienced wait staff. Although most staff were part time, at its peak, TJ's Burritos had three salaried employees, including Martin.

18. On or about September 21, 2020, in preparation for the eventual restaurant, Jackson and Martin established a Facebook page, which was titled "Tricia and Jeremy." Later in November, 2020, as plans for the restaurant became more concrete, the Facebook page was changed to "TJ's Burritos."

19. At about the same time, Plaintiff engaged Silent Partner Marketing, a marketing/public relations firm also located in East Granby. For approximately $500 per month, Silent Partner Marketing managed the social media accounts for TJ's Burritos, including posting advertisements and other promotional items on Facebook and other sites. Although the numbers differ across industries, upon information and belief, having approximately 1,000 to 5,000 followers is considered a good start for a small restaurant. Within 18 months of opening, TJ's Burritos had exceeded that threshold; upon information and belief, by that time the restaurant had approximately 10,000 followers on Facebook and approximately 7,000 followers on Instagram.

20. Constant Contact is the trade name of a Massachusetts-based company engaged in

digital and email marketing intended to engage existing customers, attract new ones and thereby grow revenue.  In or around early 2021, an account with Constant Contact was opened for TJ's Burritos and, for a monthly fee (that increased as TJ's Burritos' total number of contacts grew), the company not only implemented marketing campaigns, it also designed and thereafter hosted the restaurant's website.  Through the website, TJ's Burritos' online ordering as well as email marketing initiatives are conducted.  Upon information and belief, the marketing campaigns are also coordinated and integrated with Facebook and Instagram followers.

21.     The marketing and other promotional efforts, together the quality of the food and other aspects, translated into increased sales: TJ's Burritos went from $1.1 million in its first year to $2.1 million, almost double, in 2022.  This success also allowed TJ's Burritos to expand.  In early March, 2022, just a few days beyond its first anniversary, TJ's Burritos unveiled its expansion into vacant adjoining space, which added a 22-seat full service bar and increased the restaurant's dining space by almost 30%.

22.     In early 2024, Jackson began exploring possible expansion, either through opening another local restaurant or perhaps franchising the Florida Gulf Coast beach casual brand.  If the former, depending on proximity, Jackson's idea was to create a different concept to avoid potentially cannibalizing TJ's Burritos' sales.  As the year wore on, Jackson also began preliminary discussions with a New York-based brewery looking to expand into Connecticut, while at the same time continuing to explore possible restaurant locations in New Britain and Bloomfield.

23.     Throughout this time, Martin was included and privy to these discussions, but as she and Jackson were no longer close, her specific role in any future operations was not clearly

stated.  Perhaps based on this uncertainty, and in recognition that she was not a member of Longboard LLC and thus had no legal ownership in TJ's Burritos, Martin created Bloomfield LLC in late July, 2024.  Upon information and belief, she is the sole member.

24.     At or around the same time, Bloomfield LLC entered into a lease for vacant restaurant space in the commercial center of Bloomfield on Park Avenue.  Martin's creation of a separate limited company to own and operate the Bloomfield location tends to establish that she knew she was not an owner or member of Longboard LLC.  Instead, concerned that Longboard LLC was exploring a sale of TJ's Burritos, Martin likely determined it was necessary to take advantage of the good will and reputation built up by TJ's Burritos over the past several years and create something of her own, regardless of the legalities.

25.     Jackson was not a party to the Bloomfield lease agreement, was not consulted on what kind of restaurant Martin was planning and generally was not informed of any developments relating to the Bloomfield location.  Instead, he continued to explore a potential sale of TJ's Burritos.  Although this path was ultimately abandoned, as part of this process he did take steps to trademark the name "TJ's Burritos."

26.     Around the same time, Martin began to publicize the new Bloomfield restaurant.  An August 7, 2024 online article (*https://www.ctinsider.com/food/article/tjs-burritos-bloomfield-ct-19623739.php*) was titled: "TJ's Burritos of East Granby to bring its coffeehouse/taqueria concept to Bloomfield."  The article, which was prompted by an announcement on TJ's Burritos' "social media accounts," quotes Martin as saying that "[w]e plan on bringing almost the exact same concept that we have here in East Granby to Bloomfield."  The article continued that "[t]he same beachy, surf shop-style decor [of TJ's Burritos] will be

replicated in the Bloomfield space ....," and was accompanied by enticing pictures of TJ's Burritos' tacos and other drinks. A week later, on August 16, 2024, a similar article was published in the *Hartford Courant*. It reported that TJ's Burritos had found success with its unusual focus of Tex-Mex and coffee, recounted that both Jackson and Martin were Windsor High School graduates and that "[n]ow the pair are set to open their second location in Bloomfield ...." Martin was quoted about popular breakfast burritos and tacos she planned to copy at the Bloomfield location, and the article was accompanied by photographs of coffee flights and other drinks obviously taken at TJ's Burritos.

27.    By October, 2024, Martin's time at TJ's Burritos was decreasing. She was usually there only in the morning, and the rest of the day was spent at the Bloomfield location. However, contrary to requests, she continued to write checks on TJ's Burritos' bank account, including for a live band that Jackson told her was not wanted.

28.    At the end of October, TJ's Burritos' line cook was hired away to work at Bloomfield, which was just days away from its soft opening. As an at-will employee, he gave little advance notice and his departure left TJ's Burritos' understaffed for several weeks.

29.    At about the same time, Jackson discovered that he no longer had access to TJ's Burritos' Facebook Business Manager (now known as Business Portfolio), as the password had been changed without his knowledge (and when confronted, Martin refused to share the new password). The Business Manager is an online tool that allows a business owner to manage multiple Facebook Pages, business assets and ad accounts, as well as Instagram accounts and product catalogs, all in one place. In the online marketing industry, whoever has control of a Business Manager account (*i.e.*, password access) is said to have "omnipotent control" over the

account.  By withholding the new password, Martin eliminated the ability of anyone else accessing TJ's Burritos' Facebook page.  Consequently, its Facebook page has had virtually no new content posted since October, 2024.

30.    At the time, TJ's Burritos had approximately 15,000 followers on Facebook and around 10,000 followers on Instagram.  Upon information and belief, since late October, 2024, presumably all those followers have been given content relating exclusively to the Bloomfield restaurant.  In any event, because of the password change, Plaintiff no longer has the ability to interact with these followers.

31.    In this same time frame, Jackson also learned that the password to TJ's Burritos's Google drive had been changed – again without his knowledge.  As a result, he has been locked out of corporate files and documents stored on the Google drive, and has been unable to access the TJ's Burritos gmail account.

32.    Jackson also began receiving invoices from vendors for products and services provided to the Bloomfield restaurant that had been charged to TJ's Burritos: two separate invoices for promotional materials (business cards, flyers and customized tee-shirts and sweatshirts), and an invoice from Streamline Refrigeration and Soda Services, a Springfield-based plumbing service for repairs or modifications to the bar at the Bloomfield location. Similarly, charges for the Bloomfield restaurant, such as telephone installation, were made on the TJ's Burritos' corporate credit card.

33.    On or about November 9, 2024, Plaintiff's counsel sent Martin a letter.  Among other things, the letter confirmed that since Martin was "neither a member nor officer" of Longboard LLC, the "continued use of [TJ's Burritos] for [your Bloomfield restaurant], in an

adjoining town only nine miles away from East Granby, is unauthorized and infringes on [Longboard LLC's] trademark."  Martin was also requested to "restore access and/or provide the new passwords" for the Google drive and the Facebook Business Manager accounts.

34.     On or about November 17, Martin responded with a letter of her own.  Among other things, she disputed Plaintiff's ownership of the trademark, TJ's Burritos, and claimed (i) she owned 49% of Longboard LLC; (ii) she was the sole owner of the "TJ's Burritos" domain name, and (iii) that she had always had sole access to the Google drive and Facebook passwords. During a brief in-person meeting on November 19, Martin was encouraged to retain counsel to facilitate negotiations and was again requested to share the passwords, including the password for Sling, an online application used for scheduling restaurant staff which had recently been changed.  Martin was also informed that she was terminated effective December 1, 2024.

35.     Although counsel for Bloomfield LLC did contact Plaintiff's counsel several weeks later, the passwords continue to be withheld.  Brief in-person negotiations were held among counsel on December 11, but they were not fruitful.

36.     At around the same time, Jackson discovered that the password to the Constant Contact account also had been changed.  When he contacted Constant Contact for assistance, it was refused.  Shortly thereafter, he received an email from Constant Contact explaining that "[w]e received notification from the person listed as the Site Owner of the account that we cannot provide access to you."  As a consequence, TJ's Burritos was cut off from marketing or otherwise communicating via email with its contacts.

37.     Several days later, on or about December 15, using a computer with a retained (albeit obscured) password, Jackson was able to regain access to Facebook and attempted to post

several messages on the TJ's Burrito's Facebook page: one concerned a change in the hours of operation after the upcoming holidays, and the second was a charitable promotion for discounted burritos through December 24. By December 18, both messages were taken down and Jackson's "posting privileges" on the TJ's Burrito's Facebook page were removed.

38.     As the foregoing illustrates, the situation for TJ's Burritos has become untenable. The blatant infringement persists, the ability of Plaintiff to operate its restaurant is still impaired, and the financial damage continues to mount. TJ's Burrito's year-over-year sales for December were down approximately 40%. Thus, Plaintiff has no alternative but to seek the Court's assistance in resolving this dispute.

## FIRST CAUSE OF ACTION:
### Trademark Infringement and Unfair Competition

39.     Plaintiff incorporates by reference the foregoing paragraphs 1 through 38 as if fully set forth herein at length.

40.     Plaintiff brings this claim pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and Connecticut common law against Defendants for infringement of its valid mark and unfair competition.

41.     As alleged herein, Plaintiff is the owner of the valid mark – TJ's Burritos – which is unique and recognizable, and has improved awareness among the restaurant's existing customers and helped to attract new ones.  This mark has been used in connection with the promotion, advertising and sale of the restaurant's goods and services in East Granby, adjoining towns in the Greater Hartford area, as well as nearby communities in Massachusetts, continuously since the restaurant opened in February, 2021.

42.     As alleged herein, since around October 28, 2024, Defendants have used Plaintiff's mark without Plaintiff's consent, permission or license, in commerce, specifically in connection with the advertising and sale of similar goods and services at their competing restaurant, serving the virtually identical geographic area.  Upon information and belief, Defendants have knowingly used Plaintiff's mark to play off of the reputation and goodwill of Plaintiff's restaurant to generate unwarranted "turn key" brand recognition for their Bloomfield restaurant.  Under the circumstances, such use has been and continues to be deliberate, intentional, and willful, and in bad faith, motivated at least in part by spite and ill will.

43.     Plaintiff's mark is distinctive, and based on the similarity of the food and drink

offerings and the physical proximity between TJ's Burritos and Defendants' restaurant, the likelihood of confusion to the average consumer is overwhelming.  Not only did Martin explicitly state in promotional articles that her restaurant intended to copy the menu and decor of TJ's Burritos, she evidently made no attempt to correct the articles' misleading headlines describing her restaurant as a second location of TJ's Burritos but instead allowed the articles to use photographs of TJ's Burritos' products.  As alleged herein, the general public is highly likely to be deceived and believe, incorrectly, that Plaintiff owns, sponsors or is somehow affiliated or involved with Defendants' Bloomfield restaurant.

44.    Upon information and belief, Defendants have made, and will continue to make, substantial profits and gain from their unauthorized uses of Plaintiff's mark to which they are not entitled in law or equity.

45.    As alleged herein, Defendants' intentional and unauthorized use of Plaintiff's mark has caused Plaintiff to suffer damage and injury, which will persist until Defendants' wrongful conduct is restrained.

### SECOND CAUSE OF ACTION:
### Defend Trade Secrets Act Violation

46.    Plaintiff incorporates by reference the foregoing paragraphs 1 through 38 as if fully set forth herein at length.

47.    Plaintiff brings this claim pursuant to Section 2 of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, against Defendants for misappropriation of its trade secrets.

48.    As alleged herein, as of late October, 2024, TJ's Burritos had tens of thousands of followers on Facebook and Instagram.  These followers, along with the thousands of addresses of

its Constant Contact email recipients, had been cultivated and developed from the time of the restaurant's opening and reflect a significant investment of Plaintiff's time, effort and resources. This compilation of social media followers cannot be easily replicated or reproduced, as each entry may identify an occasional customer, a regular, a longtime vendor, a local business with shared community interests, or any combination thereof, and may include the interested potential customer who has not yet purchased a meal or drink at TJ's Burritos.  Importantly, each entry represents an individual or entity that has taken some affirmative step to "follow" TJ's Burritos.

49.    Pursuant to 18 U.S.C. § 1839(3), this compilation of email addresses and other identifiers of TJ's Burritos' social media followers constitute Plaintiff's trade secrets, in that access to this information was kept secure and protected against disclosure; the Facebook, Instagram and Constant Contact accounts through which the information could be obtained through the use of passwords, which were known only by Jackson and Martin, and prior to July, 2023, by Plaintiff's marketing vendor.  Moreover, this compilation of TJ's Burritos' followers derives independent economic value, both actual and potential, because it is not generally known to, and cannot be readily ascertainable through proper means by, any competitors of TJ's Burritos.  Indeed, any financial success Defendants currently enjoy is due, at least in part, to the exclusive audience of former TJ's Burritos' followers to which Defendants have been marketing or otherwise communicating.

50.    As the owner of TJ's Burritos, Plaintiff is the owner of these trade secrets. Neither Bloomfield LLC nor Martin are or were authorized or permitted to access or use the compilation of TJ's Burritos social media followers for the benefit of the Bloomfield restaurant.

51.    Rather, as alleged herein, Bloomfield LLC and Martin, jointly and severally,

misappropriated Plaintiff's trade secrets by changing the accounts' passwords, thereby preventing Plaintiff's access.  Upon information and belief, all social media traffic has been for the benefit of the Bloomfield restaurant to the exclusion of TJ's Burritos.  As a consequence, Plaintiff has been unable to advertise, market to or otherwise communicate with TJ's Burritos' compilation of followers.

52.    As alleged herein, Defendants' misappropriation has been and continues to be deliberate, intentional, and willful, and in bad faith, motivated at least in part by spite and ill will.

53.    As a direct and proximate cause of Defendants' misconduct, as alleged herein, Plaintiff has suffered, and will continue to suffer, monetary damages.

54.    Accordingly, pursuant to 18 U.S.C. § 1836(b)(3)(B), Plaintiff is entitled to recover from Defendants its damages for actual loss caused by the misappropriation of Plaintiff's trade secrets.  Pursuant to 18 U.S.C. § 1836(b)(3)(B), Plaintiff is also entitled to recover from Defendants damages for any unjust enrichment caused by the misappropriation of the trade secrets that is not otherwise addressed in computing damages for Plaintiff's actual loss.

55.    Alternatively, pursuant to 18 U.S.C. § 1836(b)(3)(B), in lieu of damages measured by any other methods, Plaintiff is entitled to recover from Defendants damages caused by misappropriation of Plaintiff's trade secrets measured by imposition of liability on Bloomfield LLC for a reasonable royalty for its unauthorized disclosure or use of Plaintiff's trade secrets.

56.    As alleged herein, Defendants' wrongful acts were willful and malicious and, pursuant to 18 U.S.C. § 1836(b)(3)(C), Plaintiff is entitled to exemplary damages in an amount of not more than twice times the amount of the damages awarded herein.

## THIRD CAUSE OF ACTION:
### Uniform Trade Secrets Act Violation

57.     Plaintiff incorporates by reference the foregoing paragraphs 1 through 38, and 47

through 53, as if fully set forth herein at length.

58.     Plaintiff brings this claim pursuant to Connecticut's Uniform Trade Secrets Act,

Conn. Gen. Stat. §§ 35-50 *et seq.*, against Defendants for misappropriation of its trade secrets.

59.     As alleged herein, the followers of TJ's Burritos Facebook and Instagram pages,

along with the recipients of its Constant Contact emails, have been cultivated and developed

from the time of TJ's Burritos' opening and reflect a significant investment of Plaintiff's time,

effort and resources.

60.     Plaintiff's compilation of TJ's Burritos social media followers is a trade secret, in

that pursuant to Conn. Gen. Stat. § 35-51, it is information that derives independent actual or

potential economic value from not being generally known to, and not being readily ascertainable

by proper means by, competing restaurants or others who can obtain economic value from its

disclosure or use, and prior to the wrongful acts of Defendants, was the subject of efforts that

were reasonable under the circumstances to maintain its secrecy.

61.     The wrongful acts of Defendants alleged herein, including surreptitiously

changing the passwords to TJ's Burritos' social media accounts, refusing to provide the new

passwords to Plaintiff, and then using access to the trade secrets (*i.e.*, TJ's Burritos' social media

followers) to divert all marketing and advertising from TJ's Burritos to Defendants' Bloomfield

restaurant exclusively, constitutes misappropriation pursuant to Conn. Gen. Stat. § 35-51.

62.     As alleged herein, Defendants' actions in misappropriating Plaintiff's trade secrets

was intentional, willful, and malicious.

63.    As a direct and proximate cause of Defendants' misappropriation of Plaintiff's trade secrets, Plaintiff has suffered and will continue to suffer substantial damages.  Pursuant to Conn. Gen. Stat. § 35-53(a), Plaintiff is entitled to an award of compensatory damages, in an amount to be determined at trial, for loss of its trade secrets and confidential information.

64.    As a consequence of Defendants' willful and malicious misappropriation of its trade secrets, Plaintiff is also entitled to punitive damages, pursuant to Conn. Gen. Stat. § 35-53(b), by the doubling of all compensatory damages awarded, as well as an award of its attorneys' fees and costs.

### FOURTH CAUSE OF ACTION:
### Tortious Interference with Prospective Contractual Relations

65.    Plaintiff incorporates by reference the foregoing paragraphs 1 through 64 as if fully set forth herein at length.

66.    Plaintiff brings this claim pursuant to Connecticut common law against Defendants for tortiously interfering with its prospective contractual and business relations.

67.    As alleged herein, Plaintiff enjoyed beneficial, valuable relationships with its prospective customers and existing patrons that had developed since TJ's Burritos opened. Defendants were aware of these relationships, and of their value.  Martin was an integral part of TJ's Burritos success and it is highly likely that Defendants used the same name and concept so that their Bloomfield restaurant would enjoy the benefit of TJ's Burritos' reputation and accumulated goodwill.

68.    Defendants acts' of interference, including infringing on Plaintiff's trademark and

taking over control of Plaintiff's trade secrets to market and advertise their Bloomfield location, along with the other wrongful acts alleged herein, were done intentionally and knowingly. As alleged herein, Defendants have effectively stepped between TJ's Burritos and its current and prospective patrons with the intended goal of causing those existing and future customers to cease their relationship with TJ's Burritos and instead spend their "eating out" dollars at the Bloomfield location.

69.     Because Defendants used improper means to accomplish their interference, their acts were tortious. Among other things, Defendants used Plaintiff's trademark without permission, and thereby misrepresented an affiliation between their Bloomfield restaurant and TJ's Burritos that does not exist. Consequently, Defendants' acts have deceived and confused existing and potential customers. Defendants also took and used TJ's Burritos' compilation of social media followers without permission and in the process, prevented Plaintiff from communicating with those followers. These and the other acts alleged herein were wrongful, intended to inflict harm on Plaintiff, and constitute independent torts.

70.     As a direct and proximate cause of Defendants' interference, Plaintiff has suffered and will continue to suffer substantial damages. Because Defendants were motivated to engage in this acts by actual malice, an award of punitive damages is also appropriate.

**FIFTH CAUSE OF ACTION:**
**Computer Fraud & Abuse Act Violation**

71.     Plaintiff incorporates by reference the foregoing paragraphs 1 through 38 as if fully set forth herein at length.

72.     Plaintiff brings this claim pursuant to the Computer Fraud and Abuse Act, as

amended, 18 U.S.C. § 1030(g), which generally prohibits accessing computers without authorization or in excess of authorization, and then taking specified forbidden actions, ranging from obtaining information to damaging a computer or computer data.

73.    In connection with the operation of TJ's Burritos, Plaintiff used its computer system, along with specified programs and applications, in interstate commerce or communications.

74.    As alleged herein, beginning on or about October, 2024, and continuing to the present, Defendants or Martin individually accessed Plaintiff's computer system, initially in excess of her authorized access and, after her termination, without any authorization, and thereby impaired and restricted the availability of data and information to Plaintiff.  Defendants effectively locked Plaintiff out of access to its own data and information, including (i) information stored on the Google drive and the associated email (gmail), and access to (ii) Facebook's Business Manager for TJ's Burritos, (iii) the compilation of TJ's Burritos' social media followers maintained on Facebook, Instagram and Constant Contact, and (iv) TJ's Burritos' account for Sling, the restaurant-specific scheduling program.

75.    As alleged herein, Plaintiff has sustained adverse economic consequences flowing directly from the interruption of service and restricted access to the data and information caused by Defendants' wrongful acts.

### SIXTH CAUSE OF ACTION:
### Connecticut Computer Crimes Violation

76.    Plaintiff incorporates by reference the foregoing paragraphs 1 through 38, and 73 through 75, as if fully set forth herein at length.

77.     Plaintiff brings this claim pursuant to Connecticut's computer crime statutes, Conn. Gen. Stat. §§ 52-570b, 53-451, 53-452, and 53a-251, *et seq.*

78.     In connection with the operation of TJ's Burritos, Plaintiff used its computer system, along with specified programs and applications.

79.     As alleged herein, beginning on or about October, 2024, and continuing to the present, Defendants or Martin individually intentionally accessed Plaintiff's computer system, initially in excess of her authority and, after her termination, without any authority, and thereby halted and restricted the availability of data and information to Plaintiff.  Defendants effectively locked Plaintiff out of access to its own data and information, including (i) information stored on the Google drive and the associated email (gmail), and access to (ii) Facebook's Business Manager for TJ's Burritos, (iii) the compilation of TJ's Burritos' social media followers maintained on Facebook, Instagram and Constant Contact, and (iv) TJ's Burritos' account for Sling, the restaurant-specific scheduling program, and then redirected some or all of that data or information for the sole benefit of their Bloomfield location.  The data and information tampered with, accessed and misused was the property of Plaintiff, to which Defendants had no right or legal interest.

80.     As alleged herein, at all times Defendants knew, or should have known, they were acting beyond or without authority, and their actions were intentional or reckless.

81.     As a direct and proximate cause of Defendants' wrongful access and tampering, Plaintiff has suffered and will continue to suffer actual damages, the full amount of which it is entitled to recover along with injunctive relief and the costs of this action.

## SEVENTH CAUSE OF ACTION:
### Connecticut Unfair Trade Practices Act Violation

82.    Plaintiff incorporates by reference the foregoing paragraphs 1 through 81 as if fully set forth herein at length.

83.    Plaintiff brings this claim pursuant to the Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq*.

84.    As alleged herein, Defendants conduct trade or commerce in this State.

85.    Defendants' actions alleged herein, directed at Plaintiff in this State, including, *inter alia*, infringement on Plaintiff's trademark and misappropriation of Plaintiff's trade secrets, together with the following intentional or reckless acts: 1) removing inventory without permission or compensation from TJ's Burritos for use at the Bloomfield location; 2) unnecessarily increasing TJ's Burritos' paper goods and other nonperishable inventory; 3) hiring away TJ's Burritos' line cook with total disregard of the impact of TJ's Burritos; 4) changing the password for the TJ's Burritos (I) Google drive, (ii) Facebook Business Manager account, (iii) Sling, and (iv) Constant Contact, refusing to disclose the new passwords and thereby severely restricting Plaintiff's ability to advertise, market or otherwise communicate with its customer base, employees and vendors, and (5) charging TJ's Burritos' trade accounts for certain expenses for the Bloomfield restaurant, including promotional materials, services by tradespeople, and utility installation, constitute unfair competition and unfair and deceptive acts.

86.    As a direct and proximate result of Defendants' willful and knowing actions, which were unethical, unscrupulous and offensive to this State's public policy, Plaintiff has suffered an ascertainable loss.

87.     As a result of Defendants' unfair competition and unfair and deceptive acts as alleged herein, Defendants have reaped undeserved and ill-gotten profits and gains, which they otherwise would not have received and which, in equity, Defendants should be required to disgorge.

88.     Moreover, based on the intentional and systematic practices of Defendants, as alleged herein, they are liable to Plaintiff for punitive damages, together with costs and reasonable attorneys' fees.

89.     Per Conn. Gen. Stat. § 42-110g(c), a copy of this Complaint has been provided to the Attorney General of Connecticut and this State's Commissioner of the Department of Consumer Protection.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, TJ's Longboard Burritos LLC, respectfully prays that this Court enter judgment in its favor and against Defendants, TJ's Burritos Bloomfield LLC and Patricia Martin, and:

A.    Award actual, compensatory and consequential damages sustained by Plaintiff;

B.    Award punitive damages;

C.    Award Plaintiff its reasonable attorneys' fees and costs of this action;

D.    Award prejudgment and post-judgment interest, as applicable; and

E.    Award such other and further relief, including appropriate equitable relief, as the Court may deem just and proper.

## DEMAND FOR JURY

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

/s/ Patrick A. Klingman
Patrick A. Klingman (ct17813)
KLINGMAN LAW, LLC
280 Trumbull Street, Floor 21
Hartford, CT  06103-3514
(860) 256-6120
pak@klingmanlaw.com

*Counsel for Plaintiff*

## VERIFICATION

STATE OF CONNECTICUT        :
                           : ss: East Granby
HARTFORD COUNTY            :

      Jeremy Jackson, being duly sworn, does hereby depose and state under the pains and penalties of perjury as follows:

      1.    I am over the age of 18 years, and believe in the obligations of an oath. I am the sole member of TJ's Longboard Burritos LLC, which is the named Plaintiff in connection with the lawsuit against TJ's Burritos Bloomfield LLC and Patricia Martin, and am authorized to act on Plaintiff's behalf.

      2.    I have read the Verified Complaint to which this Verification is attached, and know the allegations contained therein.

      3.    The factual allegations are true based on my own knowledge, recollection and/or the business records of TJ's Burritos, and as to those allegations based on information and belief, I believe them to be true as well.

      Dated at East Granby, Connecticut this 14th day of January, 2025.



_____
Jeremy Jackson

Subscribed and sworn to before me
this 14th day of January, 2025.



_____
Notary Public
My Commission Expires: 8/31/2028

ANNE P. NEWHALL
Notary Public, State of Connecticut
My Commission Expires Aug 31, 2028